# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DELPHI PETROLEUM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CONSOLIDATED: |
| v. | ) | |
| | ) | |
| MAGELLAN TERMINAL HOLDINGS, L.P., | ) | C.A. No. N12C-02-302 FWW |
| | ) | |
| | ) | C.A. No. N19C-05-015 FWW |
| | ) | |
| Defendant. | ) | |
| | ) | |

Submitted: December 6, 2019
Decided: April 23, 2020

*Upon Defendant's Motion to Enforce Settlement Agreement*
**GRANTED.**

## OPINION

Marc S. Casarino, Esquire, Peter J. Mooney, Esquire, White and Williams, LLP., 600 N. King Street, Suite 800, Wilmington, DE 19801, Attorneys for Plaintiff Delphi Petroleum, Inc.

Herbert Mondros, Esquire, Margolis Edelstein, 300 Delaware Avenue, Suite 800, Wilmington, DE 19801, Amelia A. Fogleman, Esquire, GableGotwals, 1100 ONEOK Plaza, 100 West Fifth Street, Tulsa, OK, 74103, Attorneys for Defendant Magellan Terminal Holdings, L.P.

**WHARTON, J.**

# I. INTRODUCTION

This consolidated litigation involves long-standing disputes between former contracting parties Plaintiff Delphi Petroleum, Inc. ("Delphi") and Defendant Magellan Terminal Holdings, L.P. ("Magellan"). In 2012, Delphi brought an action against Magellan for breach of contract and fraud arising out of the operation of a petroleum storage facility located at the Port of Wilmington ("First Action"). After a week-long trial and post-trial briefing, this Court issued its Decision after Trial on June 27, 2016.[1] Delphi moved for a new trial, and requested that the Court amend certain findings of fact and conclusions of law and amend the judgment. Delphi also moved for and pre and post-judgment interest. Magellan opposed the motions. This Court granted Delphi's motion for pre and post-judgment interest, but denied its other requests.[2] Delphi appealed and Magellan cross-appealed. The Delaware Supreme Court addressed fourteen issues on appeal, affirming all but two of this Court's decisions, and remanding the matter for the sole purpose of recalculating of the amount of pre-judgment interest to which Delphi was entitled.[3] On remand, the

---

[1] *Delphi Petroleum, Inc. v. Magellan Terminal Holdings, L.P.,* C.A. N12C-02-302 FWW (Del. Super June 27, 2016) Decision after Trial, D.I. 260.

[2] *Delphi Petroleum, Inc. v. Magellan Terminals Holdings, L.P.,* 2016 WL 7496148 (Del. Super. Dec. 30, 2016).

[3] *Delphi Petroleum, Inc. v. Magellan Terminal Holdings, L.P.,* 2017 WL 637162 (Del. 2017) (Table), *reargument denied* (Jan. 11, 2018).

parties disagreed significantly on the amount of interest and the methodology for determining it. This Court accepted Magellan's method of interest calculation, but after a second appeal, the Supreme Court directed this Court to enter judgment, in accordance with Delphi's calculation in the amount of $840,145.63.[4]

While the second appeal was pending, Delphi filed another action ("Second Action") against Magellan alleging similar breach of contract claims regarding the parties' terminalling agreement.[5] The Second Action involved alleged newly discovered information regarding "Tank 3." On May 21, 2019, Magellan filed a motion to consolidate the two actions which this Court granted.

Before the second appeal was resolved and after multiple discussions about settlement, on December 19, 2018, Delphi proposed that the parties finalize a settlement agreement. Delphi suggested Magellan make an offer, in one of three ways, which Delphi would either accept or reject but not counter. Delphi proposed that Magellan make the offer by the end of business the next day and Delphi would accept or reject by the end of business the following day. On December 20, 2018, Magellan chose one of the three options Delphi proposed, and made a final offer of $1,050,000 to settle any and all claims Delphi had against Magellan. Delphi

---

[4] *Delphi Petroleum, Inc. v. Magellan Terminal Holdings, L.P.,* 2019 WL 1594799 (Del. Apr. 15, 2019).
[5] C.A. No 19C-05-015 FWW.

accepted Magellan's offer the following day, as proposed, opting to work out the paperwork later.

Magellan now moves to enforce what it claims is a settlement agreement between the parties.[6] The motion requests dismissal of the both actions, claiming that the Second Action was expressly encompassed within that settlement agreement.[7] Whether or not a settlement agreement was reached is a fact intensive inquiry. The Court relies heavily on a series of emails between the parties in the months leading up to last Supreme Court decision in this case. As the party seeking to enforce the agreement, Magellan has the burden of showing that a binding contract arose between the parties. Magellan must show that the parties agreed to all material terms and intended to be bound by the agreement.

It is clear to the Court that Delphi intended to reach a final settlement agreement with Magellan and end negotiations when it proposed that Magellan make a final settlement offer which it would either accept or reject without countering. When Delphi accepted Magellan's final offer, it understood that the parties had reached a settlement agreement under the terms expressed in Magellan's final offer. Subsequent attempts by Magellan to expand the scope of the release and by Delphi to condition the settlement on a signed document do not alter the fact that the parties

---

[6] Def.'s Mot. to Enforce Settlement Agreement, D.I. 319.
[7] Def.'s Op. Br. in Support of Mot. to Enforce Settlement Agreement, D.I. 320.

entered into a settlement agreement on December 21, 2018 when Delphi accepted Magellan's offer of December 20th. The Court finds that Magellan's December 20, 2018 email sufficiently set out all of the material terms of the agreement. The Court will enforce the settlement agreement under the terms of that email. Accordingly, Magellan's motion to enforce the settlement agreement is **GRANTED** and both actions are **DISMISSED** with prejudice.

## II. FACTUAL AND PROCEDURAL CONTEXT

On February 29, 2012, Delphi filed its complaint in the First Action, alleging multiple contractual breaches and frauds under the parties 'terminalling agreement.[8] After a non-jury trial, this Court issued its Decision after Trial on June 27, 2016.[9] This Court ruled largely in favor of Magellan but also found that Magellan overbilled Delphi and concealed the overbilling while charging interest.[10] Delphi appealed, raising 12 claims of error. Magellan cross-appealed, raising two issues. The Supreme Court reversed on two issues, and remanded to this Court on the single issue of pre-judgment interest.[11] On remand, both parties argued opposing

---

[8] D.I. 1.
[9] *Delphi Petroleum, Inc. v. Magellan Terminal Holdings, L.P.,* C.A. No. N12C-02-302 FWW (Del. Super. Jun. 27, 2016) Decision after Trial, D.I. 260.
[10] *Id.*
[11] *Delphi Petroleum, Inc. v. Magellan Terminal Holdings, L.P.,* 2017 WL 637162 (Del. 2017) (Table), *reargument denied* (Jan. 11, 2018).

methodologies for calculating the pre-judgment interest. This Court adopted Magellan's method.

Delphi appealed this Court's pre-judgment interest order on August 10, 2018 ("Second Appeal").[12] On September 7, 2018, Delphi sent a letter to Magellan initiating settlement discussions.[13] On September 27, 2018, Delphi filed its opening brief in the Second Appeal. On October 8, 2018, Magellan responded to Delphi, offering to pay $950,000 in exchange for "full and final mutual releases."[14] On November 7, 2018, Delphi sent a proposed settlement agreement, signed by Delphi's president.[15] On November 14, 2018, Magellan responded with proposed changes to the Delphi agreement.[16] Magellan also submitted a Notice of Dismissal with Prejudice and a Release and Satisfaction of Judgment.[17] The scope of the release, in pertinent part, required "Delphi to [accept] Magellan's payment as full payment and satisfaction of all claims for damages, fees, costs, and/or pre- and post-judgment interest, with respect to any judgment or claim that was brought or could have been brought in [the] litigation or the related appeals."[18] It also required "Delphi [to

---

[12] D.I. 307.

[13] Op. Br. at Ex. 1.

[14] *Id.* at Ex. 2; "Magellan offered to pay $950,000 to settle the First Action." Op. Br. at ¶ 4.

[15] Op. Br. at ¶ 8 (Ex. 3); Ans. Br. at ¶ 9.

[16] Op. Br. at ¶ 9 (Ex. 4); Ans. Br. at ¶ 9.

[17] Op. Br. at ¶ 9 (Ex. 4).

[18] *Id.* at Ex. 4-B.

release, acquit], and forever [discharge] Magellan of and from any and all liability relating to [the] litigation, including liability for claims asserted in the matter, any claims that could have been asserted in the matter, and any claims that may have arisen by virtue of the litigation."[19]

Sometime later, the parties had a phone conversation regarding "Magellan's desire for a settlement that would extinguish all claims."[20] In a follow-up email dated December 3, 2018, Delphi notified Magellan that it intended to bring at least one additional claim based on charges related to a "Tank 3" storage fee.[21] Delphi discovered the new claim in documents from the Delaware Department of Natural Resources ("DNREC") and believed it was worth "more than $550,000."[22] Delphi acknowledged that there may be other claims based on their belief that Magellan concealed the information by failing to produce the DNREC documents.[23] Nevertheless, Delphi represented that it would "agree to extinguish all claims, the new claim and any other known or unknown claim, without exception, for $1,550,000."[24]

---

[19] Id.
[20] Op. Br. at Ex. 6.
[21] Id.
[22] Id.
[23] Id.
[24] Id.

Two days later, on December 5, 2018, Delphi sent another email with documentation relating to the new Tank 3 claim and a similar additional claim relating to a "Tank 10 issue."[25] Delphi alleged that Magellan had taken Tank 10 out of service in 2010 to perform maintenance, contrary to Magellan's position in the trial of the First Action.[26] Although Delphi indicated that it intended to pursue the Tank 10 claim in a new action, it represented that "if [they could] reach a settlement on [the Tank 3] claim, . . .Delphi [could] be convinced to abandon the Tank 10 claim and any other potential claims that might arise from the DNREC files not yet reviewed."[27]

Believing that Magellan remained interested in settlement, although disputing the DNREC claims, Delphi emailed Magellan on December 19, 2018 suggesting three settlement options:

> First, Magellan make a final counter offer to Delphi's $1,550,000 offer in settlement of all claims known and unknown, including, but not limited to the DNREC derived claims, for Delphi to accept or reject, but not counter.
>
> Second, Magellan make a final settlement offer, again for Delphi's acceptance or rejection but not counter, settling all claims known or unknown excepting only the DNREC derived claims.

---

[25] *Id.* at Ex. 7.
[26] *Id.* at ¶ 12; Ex. 7.
[27] *Id.* at Ex. 7.

8

Third, Magellan execute the agreement [Delphi's counsel] sent on November 16, 2018 and make a separate settlement offer with respect to the DNREC derived claims. Delphi would agree to reimburse Magellan's legal expenses incurred in defending itself against any DNREC derived claims Delphi prosecutes up to the earlier of the date Delphi accepts Magellan's offer, abandons its claim, or fails to prevail in an amount exceeding such offer in a trial.[28]

Delphi proposed Magellan make the offer it chose by the end of business the next day and that Delphi would accept or reject that offer by the end of business the following day.[29]

On December 20, 2018, Magellan selected the first option and responded to Delphi's proposal, stating:

Magellan opts to make a final counter-offer to Delphi in the amount of $1,050,000, to settle any and all claims Delphi may have against Magellan, known or unknown, including but not limited to all of the claims that were or could have been brought in the litigation, any claims or allegations arising in any way out of the relationship and contracts between Magellan and Delphi, and the alleged "new" claims relating to Tank 3 and 10. Magellan insists on the broadest release possible—any claim Delphi could ever possibly assert against Magellan even remotely relating to their business relationship must be released. This is a non-negotiable of the above offer.[30]

---

[28] *Id.* at Ex. 8.
[29] *Id.*
[30] *Id.* at Ex. 9; Ans. Br. at Ex. 5.

The following day, December 21, 2018, Delphi responded to Magellan's email stating: "Delphi accepts Magellan's offer. We'll work out the paperwork next week."[31]

On December 26, 2018, counsel for the parties began to work out the written agreement and Delphi sent its first draft to Magellan asking counsel for "any changes."[32] Delphi's draft stated that Magellan's payment of $1,050,000 "constitut[ed] the total amount (including all damages, fees, costs, and/or pre- and post-judgment interest) owed by Magellan to Delphi as a result of the final adjudication of all claims that were brought or could have been brought in this matter."[33] Magellan responded about an hour later stating, "[w]e will have some changes. Our appellate answer brief is due today, so getting that filed will be our first priority. We will get you any changes we have to this document as soon as possible, but it may not be today."[34]

Later that day, Delphi sent a second email with a further revised draft agreement.[35] Delphi stated that it made the release "total and broad."[36] It also stated that Delphi needed the settlement agreement executed and paid within two days of

---

[31] Op. Br. at Ex. 10; Ans. Br. at Ex. 6.
[32] Op. Br. at Ex. 12; Ans. Br. at Ex. 7.
[33] *Id.*
[34] Op. Br. at Ex. 13.
[35] *Id.* at Ex. 14.
[36] *Id.*

the date of the email.[37] Magellan responded noting that it thought it unlikely that anything could be accomplished within a two day window of time.[38] In a December 26, 2018 email, Magellan stated it would "forward its Settlement Agreement for Delphi's review in due course," and that Magellan would make payment within a reasonable time after the parties had executed the agreement.[39]

On January 2, 2019, Magellan sent Delphi a proposed settlement agreement and insisted on the release of all claims, by Delphi, and "its predecessors, assigns, transferors, affiliates, parents of all tiers, subsidiaries of all tiers, and successors, and its and their respective members, owners, general partners, limited partners, managers, officers, agents, employees, equity holders, insurers, sureties, and attorneys" of Magellan and "its predecessors, assigns, transferors, affiliates, parents of all tiers, subsidiaries of all tiers, and successors, and its and their respective members, owners, general partners, limited partners, managers, officers, agents, employees, equity holders, insurers, sureties, and attorneys."[40]

On January 7, 2019, Delphi filed a motion in the Second Appeal, requesting an extension of the deadline for filing its Reply Brief "on the grounds that the matter

---

[37] *Id.*
[38] *Id.* at Ex. 14.
[39] *Id.* at Ex. 16.
[40] Ans. Br. at Ex. 9.

[was] settled in principle and the settlement agreement [was] in its final stages."[41] On January 8, 2019, the parties exchanged draft agreements but were unable to agree on a version.[42] The next day, Magellan re-sent its prior draft of the agreement stating, "[i]f this version is not acceptable to Delphi, then Magellan will assess its options, including taking steps to enforce the original agreement of the parties."[43] Delphi responded later the same day regarding the scope of the release. Delphi claimed that Magellan's draft of the agreement exceeded the scope of the release to which the parties originally agreed. Delphi stated that the parties had originally agreed that "Delphi had to relinquish any claim Delphi could ever possibly assert against . . . . Magellan."[44]

> [Magellan] did not say, and Delphi did not agree, that Delphi had to hold Magellan harmless against all claims that might at some future date be brought by any person or entity other than Delphi including, but not limited to, a Delphi agent, etc., over whom Delphi has no control, and whose claim may bear no relationship to the parties' business relationship.[45]

---

[41] Op. Br. at Ex. 17.
[42] *Id.* at Ex. 18, 19.
[43] *Id.* at Ex. 20.
[44] *Id.* at Ex. 21.
[45] *Id.;* Ans. Br. at Ex. 12.

The parties continued to negotiate the written agreement to no avail. On January 11, 2019, Magellan provided a revised agreement to Delphi.[46] Delphi responded with its re-draft stating, "[i]f we are unable to reach an accord on the wording, Delphi is willing to ask the Court to enforce Magellan's December 20, 2018 settlement offer and Delphi's December 21, 2018 acceptance.[47]

On January 16, 2019, Delphi sent Magellan a draft agreement "releasing all claims that [Delphi] can control."[48] In its email, Delphi "reserve[d] the right to enforce the December 20-21 Agreement."[49] On January 17, 2019, Magellan sent a version of the agreement it was willing to sign, but the parties were still unable to agree. On January 30, 2019, Delphi emailed Magellan saying it expected to get back to Magellan "shortly."[50]

Three months later, on April 9, 2019, Delphi's counsel responded to Magellan stating:

> I know we have a common interest in foregoing any more litigation and, although the parties agreed on a settlement, they haven't been able to agree on the wording of the document memorializing the settlement. I intend to get back to you on that matter later this week or early next week, however, because the statute of limitation deadline for the new claim . . . is fast approaching, I need to file the

---

[46] Op. Br. at Ex. 22.
[47] *Id.* at Ex. 23.
[48] *Id.* at Ex. 25; Ans. Br. at Ex. 14.
[49] *Id.*
[50] Op. Br. at Ex. 27.

claim now unless Magellan would agree to toll the statute.[51]

A few days later, on April 15, 2019, the Delaware Supreme Court entered an Order in the Second Appeal, reversing this Court's decision, validating Delphi's calculations, and remanding the matter. After the mandate was issued on May 1, 2019 and the case was remanded to this Court, Magellan informed the Court of what it asserted was the parties' settlement agreement and stated its intent to file this motion. On May 21, 2019, Magellan filed a motion to consolidate the First and Second actions, which this Court granted. On May 28, 2019, Magellan paid Delphi the settlement amount of $1,050,000 by wire transfer.[52] Magellan filed this Motion to Enforce the Settlement Agreement on May 31, 2019.[53]

## III. THE PARTIES' CONTENTIONS

Magellan contends the motion should be granted and the parties' settlement agreement enforced because the parties agreed to all material terms on December 21, 2018. The issues regarding the timing of payment and the scope of the release were not material and agreement on those terms was not required for a binding agreement to be formed.

---

[51] *Id.* at Ex. 28.
[52] *Id.* at Ex. 29.
[53] D. I. 320.

In response, Delphi argues that no enforceable agreement was reached because: (1) the agreement was conditioned on the execution of a signed written agreement; and (2) the parties did not agree on the scope of the release, which was a material term of the settlement. It contends that Magellan did not intend to be bound by the December 20th and 21st emails because Magellan conditioned the settlement on a signed written agreement and refused to fulfill its obligation to pay without a signed agreement. Although Magellan eventually made the settlement payment, Delphi asserts that Magellan only paid the settlement amount a few days before filing this motion. Delphi argues that the parties had not agreed upon all of the material terms of the agreement because they had not agreed upon the scope of the release. Additionally, Delphi says Magellan's initial refusal to pay the settlement amount was linked to their desire to achieve the broadest release possible. Delphi argues the lack of a signed release is evidence that the parties could not agree to a material term of the agreement - the scope of the release.

## IV. DISCUSSION

Delaware courts favor the negotiated settlement of contested legal disputes and enforces them as contracts.[54] Settlement agreements are binding where the parties agree to all the material terms and intend to be bound by that contract,

---

[54] *Schwartz v. Chase*, 2010 WL 2601608, at *4 (Del. Ch. June 29, 2010) (citing *Clark v. Ryan*, 1992 WL 163443, at *5 (Del. Ch. June 12, 1992).

whether or not the contract is in writing.[55]  A party seeking to enforce a purported agreement has the burden of proving the existence of a contract by a preponderance of the evidence.[56]  In determining whether the movant has met its burden, the Court must ask:

> Whether a reasonable negotiator in the position of one asserting the existence of a contract would have concluded, in that setting, that the agreement reached constituted agreement on all of the terms that the parties themselves regarded as essential and thus that that agreement concluded the negotiations and formed a contract.[57]

Under Delaware law, determining whether the parties reached a binding contract to settle requires an examination of the parties' overt manifestations of assent.[58]  It is this objective manifestation that controls the question of whether an agreement was reached on all material terms.[59]

## A. The Parties Intended to be Bound and Did Not Make the Settlement Agreement Contingent on the Execution of a Written Document.

Despite the objective facts which demonstrate the parties' clear intent to be bound, Delphi contends that neither party intended to be bound by an agreement absent a signed writing.  Delphi argues two grounds in support of its position.  First,

---

[55] *Id.* (quoting *Rohm & Haas Elec. Materials, LLC v. Honeywell Int'l, Inc.*, 2009 WL 10033651, at *4 (D. Del April 16, 2009).
[56] *Schwartz* at *4.
[57] *Id.* (quoting *Fox v. Paine*, 2009 WL 147813, at *5 (Del. Ch. Jan. 22, 2009).
[58] *Schwartz* at *4.
[59] *Spacht v. Cahall*, 2016 WL 6298836, at *2 (Del. Super. October 27, 2016).

Delphi argues that Magellan "positively and unambiguously conditioned the settlement" on a signed agreement. Second, Delphi contends that because Magellan would not perform by paying the settlement amount before it had a signed written agreement, it never intended to be bound before a signed writing existed.[60] The law in Delaware on this issue is clear:

> Where all the substantial terms of a contract have been agreed on, and there is nothing left for future settlement, the fact, alone, that it was the understanding that the contract should be formally drawn up and put in writing, did not leave the transaction incomplete and without binding force, in the absence of a positive agreement that it should not be binding until so reduced to writing and formally executed.[61]

Thus, the question is whether the parties "positively" agreed to be bound only by a formal agreement.

As to whether Magellan conditioned the settlement agreement on a signed writing, it is a matter of contract law that an acceptance "must be identical with the offer and unconditional."[62] If a reply to an offer purports to accept that offer but

---

[60] Ans. Br. at ¶ 42.
[61] *Loppert v. WindsorTech, Inc.*, 865 A. 2d 1282, 1287 (2004) (quoting *Universal Products Co. v. Emerson*, 179 A. 387, 394 (Del. 1935).
[62] *Schwartz* at *7 (quoting *Friel v. Jones*, 206 A.2d 232, 233-34 (Del.Ch. 1964), *aff'd* 212 A.2d 609 (Del. 1965)).

instead attaches a condition that requires additional performance by the offeror, such a reply is a counteroffer and not an acceptance.[63]

Delphi relies on three emails to support its argument that a fully executed settlement agreement was required for an enforceable agreement. They are emails dated November 16, 2018, December 26, 2018, and January 4, 2019.

### 1.    November 16, 2018 Email

In the November 16, 2018 email, Magellan wrote Delphi asking whether it objected to a proposed request to the Delaware Supreme Court for an additional extension to file its brief.[64] According to the email, Magellan planned to represent to the Court that the parties "[had] reached a tentative settlement agreement but require[d] additional time to agree on the written documents..."[65] Delphi asserts that Magellan's proposed representation shows that written documents were essential to the settlement and indeed constituted a condition of settlement. The Court disagrees.

The Court notes that the parties had been engaged in settlement discussions as early as September 2018. At the time of the November 16th email, the parties had not engaged in either a formal offer or acceptance. By December 19, 2018, it

---

[63] *Id.*
[64] Ans. Br. at Ex. 3.
[65] *Id.*

appears that Delphi wanted to bring negotiations to a close when it solicited Magellan's best and final offer, which it would either accept or reject without making a counter offer. Magellan's offer occurred the following day on December 20, 2018. Delphi's acceptance occurred on December 21, 2018. Delaware law interprets the reasonable expectations of the parties at the time of contract.[66] Thus, it is obvious to the Court that the contents of the November 16th email do not reflect the parties' intention at the time of contract in late December. Further, even if it were relevant, the November 16th email does not show that either of the parties conditioned settlement on a signed agreement.

### 2. December 26, 2018 Email

Delphi relies on the December 26, 2018 email, sent at 3:46 p.m., from Magellan to show that Magellan conditioned the settlement agreement on an executed written agreement.[67] In that email Magellan writes, "[a]fter the parties execute the agreement, Magellan will make payment within a reasonable time and in compliance with the terms of the written agreement."[68] Delphi contends that the email evidences Magellan's intent to be bound only after the execution of the written agreement. Not so. Delphi's argument addresses the timing of performance rather

---

[66] Schwartz at *4.
[67] Ans. Br. at ¶ 16.
[68] *Id.* at Ex. 8; Op. Br. at Ex. 16.

19

than an intent to be bound. Delaware law requires evidence that the parties "positively" agreed to be bound solely by a formal document.[69] A look into the draft agreements between the parties shows that the parties contemplated that Magellan would pay within a certain amount of time after the signed agreement was executed. Specifically, the draft Delphi sent to Magellan at 8:31 a.m. on December 26, 2018, states that Magellan would wire transfer the settlement payment within an undetermined number of business days after the "signing of the Agreement."[70] Thus, Magellan's statement in the 3:46 p.m. email that it would transfer the settlement funds within a reasonable time after the execution of the agreement is merely a communication regarding performance timing and not evidence of an intent to only be bound by the written agreement.

### 3.    January 4, 2019 Email

Finally, Delphi relies on the contents of the January 4, 2019 email as evidence that Magellan did not intend to be bound by the December 2018 agreement.[71] Magellan wrote to Delphi stating that "Magellan's obligation should be triggered only after the agreement is fully executed."[72] Magellan counters explaining that, in context, Magellan was merely responding to Delphi's earlier proposal that the

---

[69] *Loppert*, 865 A. 2d at 1287.
[70] Op. Br. at Ex. 12.
[71] Ans. Br. at 1-2, 22.
[72] Ans. Br. at Ex. 1.

settlement payment be made on a date certain regardless of when the executed by both parties.[73] Instead, Magellan modified the draft settlement agreement to require payment "[w]ithin five (5) business days of both parties signing the Agreement."[74]

The Court agrees with Magellan. The applicable standard is whether the evidence positively shows that the parties intended to be bound after the execution of a written document. Here, there is no evidence that the parties agreed to be bound only by a formal document.

## B. Magellan Meets Its Burden of Proving the Existence of a Contract

"A party seeking to enforce [a] settlement agreement has the burden of proving the existence of [a] contract by a preponderance of the evidence."[75] Magellan asserts that the parties' repeated and express statements of intention to enforce the settlement agreement shows that the parties intended to be bound without a signed writing.[76] Magellan argues that the following communications refute any suggestion that a separate, executed written agreement was required:

---

[73] Resp. at 8; Delphi's draft agreement required Magellan to pay the settlement amount on January 10, 2019. Resp. at Ex. 1.
[74] *Id.*
[75] *Schwartz* at *4.
[76] Resp. at 9.

21

- In a January 7, 2019 motion, Delphi represented to the Delaware Supreme Court that the matter was "settled in principal."[77]

- In a January 8, 2019 letter to Delphi, Magellan threatened that it would enforce the original email agreement of the parties.[78]

- On January 9, 2019, Delphi assented to its intent to be bound in its letter to Magellan when it agreed that the "December Agreement" should be enforced, argued that its proposed language "comport[ed] with the settlement made on December 20/21," and asked if Magellan would "prefer to ask the court to enforce the December 20/21 settlement offer and acceptance."[79]

- In a January 11, 2018 email to counsel for Magellan, Delphi indicated that it was "willing to ask the Court to enforce Magellan's December 20, 2018 settlement offer and Delphi's December 21, 2018 acceptance" if the parties could not agree to the wording of the draft settlement.[80]

- In a January 16, 2018 email of another draft settlement version from Delphi to Magellan, Delphi "reserve[ed] the right to move to enforce the December 20-21 Agreement."[81]

The Court determines that both parties intended to be bound at the time of the December 20th offer and December 21st acceptance. Indeed, the December 19th email from Delphi to Magellan demonstrates its desire that the parties attempt to

---

[77] Op. Br. at Ex. 17.
[78] *Id.* at Ex. 20.
[79] *Id.* at Ex. 21.
[80] *Id.* at Ex. 23.
[81] *Id.* at Ex. 25.

bring their negotiations to a close in two days if they were to reach an agreement. Although Delaware Courts have held that significant mistrust between the parties could indicate that neither party would have intended to be bound by a settlement agreement without a writing,[82] Delaware courts also recognize that the inquiry is fact-intensive.[83] Here, for whatever reason, be it contentiousness, mistrust, or attempts to gain a post-agreement advantage, the parties were unable to reduce their agreement to writing. However, at different times, each party threatened to enforce the terms of the December 20th offer—Magellan in the January 8th email and Delphi in the January 11th email. Both parties conceded as much during argument before the Court. Therefore, the parties' intent to be bound by the Agreement is evident. Accordingly, the question left for the Court to decide is whether the December Agreement contained all the essential terms.

### C. The December 20, 2018 Offer Contained All of the Terms Essential to the Settlement Agreement.

Magellan's December 20, 2018 offer seeks to pay Delphi $1,050,000 to settle:

> any and all claims Delphi may have against Magellan, known or unknown, including but not limited to all of the claims that were or could have been brought in the litigation, any claims or allegations arising in any way out of the relationship and contracts between Magellan and Delphi, and the alleged "new" claims relating to Tanks 3 and 10.[84]

---

[82] *Schwartz* at *8.
[83] *Spacht* at *2.
[84] Op. Br. at Ex. 9; Ans. Br. at Ex. 5.

23

Magellan further insisted on the broadest release possible as a non-negotiable condition of its offer.[85] Delphi unequivocally accepted the offer.[86] In the January 11, 2018 iteration of the Agreement, Delphi attempted to modifiy the agreement to release all claims not just of Magellan, but its predecessors, assigns, transfers, affiliates, parents of all tiers, *etc.*, including a "hold harmless" provision. Delphi argues, in its papers and at oral argument, that Magellan's insertion of a "hold harmless" provision exceeded the scope of release that the parties originally contemplated. Magellan contends that any modification it made to the scope of the release constitutes boiler plate language in settlement agreements. Delaware courts will not enforce terms of a written agreement which, although they may be 'reasonable,' were not discussed by the parties.[87] The Court finds that a valid contract existed between the parties based on the Magellan's offer of December 20th and Delphi's unequivocal acceptance of December 21st. The Court further finds that the contract must be limited to the terms of the agreement set out in Magellan's December 20, 2018 offer, including the scope of any release.

---

[85] *Id.*

[86] Op. Br. at Ex. 10: Ans. Br. at Ex. 6.

[87] *Spacht* at *4 (quoting *Corbesco, Inc. v. Local No. 542*, 620 F. Supp. 1239, 1244 (D. Del 1985)).

## V. CONCLUSION

**THEREFORE, IT IS ORDRED** that the Motion to Enforce the Settlement Agreement is **GRANTED.** Both the First Action, *Delphi Petroleum, Inc. v. Magellan Terminal Holdings, L.P.,* C.A. No. N12C-02-302 FWW and the Second Action, *Delphi Petroleum, Inc. v. Magellan Terminal Holdings, L.P.,* C.A. No. N19C-05-015 FWW, are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Magellan Terminal Holdings, L.P., shall submit to the Court a form of release consistent with this Order no later than 30 days from the date of this Order.

**IT IS FURTHER ORDERED** that Delphi Petroleum, Inc. shall submit any objections to Magellan's proposed form of order no later than 15 days after Magellan's submission.

**IT IS SO ORDERED.**

_____
Ferris W. Wharton, J.

25